First case this afternoon is case number 4150961, Barry v. St. Mary's Hospital Decatur. For the appellant we have Larry D. Drury. For the appellee, Chris Ellis. Mr. Drury, please proceed. Good afternoon, Your Honor. I'm pleased to court counsel. As you're all aware, this case was initially dismissed with prejudice below. The court below basically relied on one case as the basis for the dismissal. However, this case is substantially different and much distinguishable as we have set forth in our briefs. I would just like to point out a few sections of a couple of the agreements that I feel makes very clear why these cases are distinguishable. The first agreement, Your Honor, is the facility agreement that was entered into between St. Mary's Hospital and the insurance company, Private Health Care Systems, Inc. They have a payor and the payor under that system was consultiant. Now pursuant to that agreement under section 1.3, there's definitions of the contract, covered person, etc. There's no dispute that Mr. Barry, per the definitions, would be a covered person under this agreement. The agreement also provides for preferred payment rates and the preferred payment rates are basically discount rates per the contract between the hospital and the insurance company. Now importantly, Your Honors, section 7.1, 7.2, and 7.3 of this agreement are very important. 7.1 talks about submitting all claims within 60 days after the service is provided. 7.2 makes it abundantly clear that once the provider is paid by the carrier, in this case, consultant, the preferred payment, which is the discount payment, which is made, is full compensation, paid in full. There is no further basis under this agreement for St. Mary's to pursue Mr. Barry or anyone else for the full amount of the medical services that they rendered. Well, is St. Mary's even arguing that on the first two bills? On the first two bills, St. Mary's, our position is that the lien went out and the lien was for the full amount. Eventually, Your Honor, it was paid, and it was paid at a discounted amount for the first two invoices. The third invoice is still outstanding because it was their argument that Mr. Barry or anyone else could take over. Well, I probably phrased my question poorly. St. Mary's is not arguing at this point that they deserve any more payment on the first two bills, are they? That's my question. With the lien still being outstanding and the lien requesting full payment, effectively, they are arguing that because the lien is for the full amount of the bill as opposed to the discounted amount. Counsel, did you move to adjudicate the lien? No. The lien has not been adjudicated. The two liens that have been paid now? No, as far as I know. I was in counsel below on that part of the personal injury case, but I don't believe there was any pleadings or filings to adjudicate those two invoice liens. So my answer is no. Additionally, Section 7.2 of the agreement calls for, again, full compensation, and in 7.3 states as follows in part, In no event will the facility biller require any covered individual to tender any payment with respect to covered care other than copayments, deductibles, and coinsurance. So it's abundantly clear that under this agreement that they entered into, all they can go for is the discounted amount. And interestingly, we cite the N.C. case, the Lopez case, etc., but the N.C. case was ruled on in 1999. It was subsequent to that case, and N.C. said, well, once you've been paid, there is no debt. If there is no debt, then it's extinguished and there's no lien to attach. But that case being the law, St. Mary's took it upon itself to enter into this agreement with consociate and private health care systems that contracts away any ability for them to go ahead and get the full amount. It's not as if they didn't know it was there. They're bound by their contract. And Lopez and N.C. both say that. And if they chose to change the terms of their contract so that they could still proceed and proceed for the full amount of services rendered, they could do it. And they didn't, and they should have been or were aware of the N.C. case. The second agreement, which I would like to mention to your honors, and it happened right at the beginning, when Mr. Berry went to the hospital, they had him sign what we call a consent form. And under that consent form, it provides, in part, under Section 2B, that St. Mary's is authorized to bill the treating physician so they could basically go to the insurance company and collect. 3B states, in part, the patient is responsible for payment of appropriate charges for services rendered if the requirement is not fulfilled. But 3C states, I hereby assign transfer and set over to the following parties their insurance policies in an amount sufficient to pay my indebtedness. Now, this is important. It's not for somebody else's indebtedness. Their agreement says to pay my indebtedness, not to pay that it's the indebtedness of the third-party tort fees. They say it again under 3D, self-pay balances. I understand I am financially responsible. Berry, not another person, not a third-party tort fees, for charges not covered in full or in part by authorization in preceding Section 3C. So we have the facility agreement, which they knowingly entered into a contract, which obligates them to do certain things. They want the benefit of that agreement because discount agreements, the idea would be they would be able to bring in possibly more patients because of the preferred rates. But they don't want the responsibility of it. They don't want to pay out under it. And why don't they want to pay out under it? Because they want to get 100% recovery for their billing and knowing that they can't do it. Now, that consent agreement, Your Honor, also says towards the bottom there that the patient is responsible for all the charges. That's not true. And they know it's not true. And how is any patient supposed to know that? It's deceptive, right on its face. There was also letters sent from the law firm, two letters in February, I believe, of 14, which said one went to my co-counsel, Mr. Atterbury, who's here, and one went to State Farm, who is the insurance carrier for the third-party tort fees. And in each of those letters, in the paragraphs towards the bottom, they know that basically the full responsibility for paying for the medical services rendered by their client, St. Mary's, falls upon Barry. Not true. Why isn't it true? Because that facility agreement prohibits them from doing that. And how is anybody who comes in, depending on the circumstances, to a hospital supposed to know that this agreement is even in place? They wouldn't.  So based upon NC, based upon Lopez, based upon for whatever weight this court chooses to put on Judge Shader's opinion, which is cited in his briefs, Judge Shader said, the Lopez court said, the NC court says, if you enter into a contract too bad, you can't have buyer's remorse and breach that contract. You can't have double billing because these agreements say that you can't do it. And therefore, you're bound by that agreement. Again, if the debt is paid, the debt is extinguished. If there is no debt, there is no link to attach anything because the debt has been extinguished. That's what they're doing here. Now, if you multiply what they've done by hundreds of thousands of people, you're talking about a substantial amount of money for which people pay good insurance premiums. And then there's also the question of whether or not, pursuant to the terms of the facility agreement, they actually made these, submitted these claims. We know that they didn't submit one. They didn't submit one because they said, well, your client went ahead and told us not to do it. But here's the problem with that. That particular invoice, invoice number three, is for about $18,000. The time is long gone for Mr. Berry now to go in and make his claim with the insurance carrier because under the terms of his policy, they're not going to look at it. So again, St. Mary's takes it upon themselves to do what they want to do. Isn't it odd that St. Mary's or any hospital facility is the one to determine whether or not someone is entitled to insurance benefits? I don't think so. I don't think so. And I don't think there's any dispute with respect to these agreements. For these reasons, Your Honors, I would ask that the judgment of the lower court be reversed. I would also ask, and I'll take it up more and argue it, that I'm well aware and everybody in this room is well aware of the Roballo opinion. And that's what the lower court relied upon. And I will address that in my reply. But the points that I have made here is that Regala is clearly, clearly distinguishable from this case. And one thing about Regala is they had a capitation agreement in Regala. There is no capitation agreement in the Berry case. In Regala, they also had a reservation of their right to subrogation. They don't have this here. So as far as we're concerned, the Regala is not good authority for the dismissal of this case. We have asked, and I'll address it in a few moments after counsel has done his response, to either reverse or reconsider the Regala decision, whichever suits the court. And if there's any questions, I'd be happy to answer them. I don't see any, but you will have your butthole. Thank you. Thank you. Mr. Ellis. Good afternoon, Your Honor. This is the court. The Health Care Services Lien Act provides an absolute right for health care providers to assert liens related to care that it provides. The statute is clear that those providers, quote, shall have a lien upon all claims and causes of action. That lien then attaches to recovery that might be received by an injured party. This court in Regala held that the lien itself attaches to what is the tort fees or debt to the plaintiff and provider. It is not the plaintiff's debt. So what that means is that the amount of money that is at issue for the services provided will be paid, hopefully, into a fund. And it is the hospital has asserted a lien against that fund. The hospital has not directed any claim against Mr. Baird. And it does not assert claims against patients for the health care. The claim when a lien is advanced is against the fund. So based on the plain language of the act and based upon this court's prior holding, St. Mary's Hospital, like many hospitals in the state and in this district, comply with the law. And when a person presents to the hospital and they've been injured, they take out a lien on any future recovery. Many of the health insuring agreements that are at issue, in fact, have language that require a hospital to take that step because the insuring agreement is excess to third-party coverage. In this case, actually, when the claim was submitted to Mr. Baird's health insurance company, the health insurance company denied the claims because it said there is third-party liability. And under the terms of the contract, you need to go collect from that hospital before you can turn to us. But the bigger question I think at issue in this case, as opposed to the individual issues that have come up with respect to Mr. Baird, is the purpose of the class action complaint. Again, it's not an individual claim. Class action has been filed that is saying to the hospital, you cannot assert a lien under the Health Care Services Lien Act if an individual has private health insurance. That's what the case is about. That's what the complaint is about. Because if the assertion of the lien is valid, which we believe under both the statute and the law it clearly is, then Mr. Baird and the class can have no complaint because they've not been injured in any way. So the only complaint that can exist is if this court were to write into the statute some language that isn't there, basically prohibiting the hospital from asserting a lien when private health insurance is available. And it's not in the language. It wouldn't follow what this court has already done in Rogallo, which is a well-reasoned opinion. And I don't think the court should take that step. That's a very good question. The argument was not raised below. It was not in the complaint. It was not in any of the filing. The standard practice of the hospital is when a lien is put out, it is released upon the request of a plaintiff's attorney. So the attorney calls and says, hey, we're trying to resolve everything. You have a lien. We're going to pay you X amount. Please issue a release of the lien. It didn't happen here because it was never asked for. And it's not an affirmative conduct that the hospital does after a lien has been sent and payment has been received, it's a deferment of lien release. I guess my question is, in the scheme of things, in common sense, why let this thing hang out there and fester and cause more attorney's fees and require an adjudication of a lien when it appears that the hospital concedes that they've been paid for those two, no debt exists and therefore no lien exists? And you are correct. We concede that no additional funds are due and owing under those two bills. They have been paid by insurance, so other than any co-pays or deductibles that are required by Mr. Berry, the hospital is not claiming any additional money. The liens themselves, upon payment, if I could go back in time, they would be released. And it's something that I'm sure will happen now that this has gone forward. Now, as to the third lien, that lien, of course, is still pending. Looking at and addressing questions and some argument that has been made here, the hospital does not disagree with the fact that it was stated that the hospital would pay its ability to recover the full amount of a medical bill. And that principle, what that means is that when the hospital enters into preferred payment plans, it does agree to accept a lesser amount for a service than it would otherwise pay. The hospital cannot turn around and bill to an individual covered by the plan the difference, the full amount versus what they agreed to take under the agreement with the healthcare provider. The hospital doesn't do that. That would be called balance billing. The hospital does not do that. But just because contracts are entered into that provide a discounted payment rate for a healthcare plan does not take away the statutory right that the hospital has on the one hand to assert liens under the healthcare services lien act. And we believe that Judge Little, when he reviewed all of the facts, he reviewed the case law, that he agreed with the fundamental premise that if the hospital's actions with respect to asserting the lien were appropriate and allowed for under the statute and under controlling court district precedent, then the case as a whole had to fail. And that's why it was dismissed with prejudice and that's why we're where we're at today. Your Honors, I could answer any questions you might have. I don't feel the individual facts are overly relevant given the procedural posture we're at today. I think that the law is clear. I think the hospital follows that law. I would ask that the judgment from the lower court be affirmed. Okay. I see no questions. Thank you. Is there any rebuttal? I would like to address a couple of the issues that counsel raised. It appears from the briefs of the appellee and counsel's argument today that the healthcare lien act somehow trumps everything else. But that act is not a regulatory act. It was initially put into place to help the poor, as we said in our briefs, kind of create a debtor-creditor relationship, and that's what it's for. But there's nowhere to be found anywhere that when the hospital enters into a contract knowingly and voluntarily, and having been aware of prior cases that say if you contract, you're bound by your contract, that this statute is in effect. That this statute trumps an agreement. As I said initially, and I'll repeat again, if they were so concerned about the healthcare act itself and the effect of the contract that they entered into, then per Lopez, per ANSI, they were not prohibited in any way from putting into the contract those terms which they feel would have protected them against why we're here today. They didn't do it. So they can't come in here and argue and all of a sudden say that this statute just wipes everything away. It doesn't. As far as Rogala is concerned, they raised Rogala and cited Rogala no less than 36 times in their response. My answer to that is Rogala doesn't apply to this case for all the reasons that I previously have argued. Counsel mentioned that this case is filed as a class action. Yes, it's filed as a putative class action. A motion to certify the class was filed, but that's not before the court now. We never got the discovery. The issue of class certification is not before the court at this time. Hopefully, down the road, it will be. The release. Now, they were very capable of sending out a release, and counsel has said on behalf of St. Mary's, well, we're not going to go after anybody. We're happy we got the payment from a consociate. We got paid under the preferred rate. But there's still a lien out there. Right, but isn't it correct that ordinarily plaintiff's counsel would move to adjudicate the lien? I mean, it goes both ways. Yeah, well, I'm not prepared to say yes all the time because different attorneys operate in different ways. I'm not a personal injury attorney. If it's resolved and it's resolved, if they choose to adjudicate it, they can, but it should be incumbent upon St. Mary's to release their lien because they have the money in their pocket, but they still think that they can collect. They might still go after Mr. Berry just because counsel says that his client has no intention of doing that. That doesn't mean that the lien just falls by the wayside, and even as we're here today, there's no release. There's been plenty of times since this case was filed for a release. It just hasn't come. Now, in closing, it appears that the defendant agrees with how these facility agreements work. He said it himself. That's the case. They contracted for it. They're responsible for it. Again, they want the benefit, but they don't want the responsibility. I'd like to clear up just one thing that I said in the opening, and when I was quoting from the consent agreement, paragraph 3B, I want to be clear. What it says is, I understand that not fulfilling all insurance requirements prior to receiving care could result in the reduction of benefits or coverage. If the requirements are not fulfilled, the patient is responsible for payment of appropriate charges. Well, even if they're not fulfilled, they're not responsible for the charges, and they're not responsible for the charges because they entered into a contract that doesn't make them responsible. For all of these reasons, I would ask that the judgment of the trial court be reversed, that the case be remanded to the trial court for further proceedings. Thank you. Okay. Thanks to both of you. The case is submitted, and the court stands in recess.